**UNITED FOOD & COMMERCIAL WORKERS UNION LOCAL NO. 115, and Sausage Makers' Union Local No. 203, UFCW, Plaintiffs,**

v.

**ARMOUR AND COMPANY, Conagra, Inc., and Armour Food Company, Defendants.**

**No. C–84–0080 RFP.**

United States District Court, N.D. California.

Jan. 11, 1985.

Stewart Weinberg, David A. Rosenfeld, Van Bourg, Allen, Weinberg & Roger, San Francisco, Cal., for plaintiffs.

Jonathan H. Sakol, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for defendant Armour and Co.

A.K. Abraham, Berman & Carter, San Francisco, Cal., for defendant Conagra, Inc.

Norbert E. Anderson, Phoenix, Ariz., for defendant Armour Food Co.

## MODIFIED ORDER RE SANCTIONS

PECKHAM, Chief Judge.

### INTRODUCTION:

On June 29, 1984, the court entered an order awarding attorney's fees and costs to Armour & Co., from the plaintiffs' law firm (hereinafter "Unions' counsel"). On July 30, 1984, Armour & Co.'s counsel turned in an itemized list of expenses it claims Armour is entitled to under the June 29th order. The total is $22,046.68. Unions' counsel contests the amount of the claim, and also attacks the court's award of attorney's fees under Rule 11.

For the reasons set forth below, the court affirms its order granting Armour & Co. sanctions. The court orders Unions' counsel to pay $7,500 in sanctions. The court also orders that Unions' counsel promptly and fully comply with its June

29th order in all other ways—certifying to the court: "(1) that no part of the sanctions has been or will be charged to or paid, directly or indirectly, by the firm's clients in this matter, and (2) that a copy of this memorandum and order [of June 29, 1984] has been given to and read by every partner and associate in the firm." Order, filed June 29, 1984, at p. 20.

## FACTS:

Plaintiffs filed this action against Armour & Company (hereinafter "Armour") on January 9, 1984, claiming it had refused to arbitrate, when it had not even been asked to arbitrate. Plaintiffs filed a first amended complaint claiming the same refusal, on February 21, 1984, after Armour had agreed to arbitrate the claim, and plaintiffs knew this fact. Plaintiffs then proceeded to make broad discovery requests on Armour.

On March 3, 1984, Armour filed an answer in which it set forth the fact that it had agreed to arbitrate. Then, on March 19, 1984, Armour moved for summary judgment and a protective order from the discovery requests. Armour also requested sanctions under rule 11 and attorney's fees under rule 37(a)(4). The motion was fully briefed, and the summary judgment hearing took place on April 16, 1984.

In the June 29, 1984 order, the court granted Armour's motion for summary judgment and the protective order. The court also granted rule 11 sanctions including attorney's fees and costs to the extent that Armour could attribute these costs to "defending against the charge in plaintiffs' first complaint—*i.e.*, the charge that Armour & Co. must be compelled to arbitrate because it had failed and refused to do so."

First, Unions' counsel attacks the propriety of any sanctions against it. Second, Unions' counsel raises questions about the amount of fees Armour requests.

## ANALYSIS:

A. *The propriety of sanctions in this case.*

As part of its objections to the fee request, Unions' counsel renews its argument on whether the court should have ordered sanctions under rule 11 of the Federal Rules of Civil Procedure. Unions' counsel has not made a motion for reconsideration of the June 29th order, but the court will again briefly address the propriety of sanctions in this case. The court does so to dispel any idea that the court's unwillingness to grant the full $22,000 fee reflects a retreat from the court's June 29th decision that sanctions are appropriate in this case.

■ Unions' counsel argues that the court never found that the complaint was interposed to delay or harass Armour, or that it was in bad faith, and therefore sanctions are inappropriate. Unions' counsel misunderstands the nature of new rule 11. Rule 11 now requires an attorney who signs a complaint to certify both that it is not interposed for delay, harassment, etc., and that there is a reasonable basis in law and fact for the claim. Rule 11 no longer inquires only into the subjective "good faith" intent of a party. *Zaldivar v. City of Los Angeles*, 590 F.Supp. 852, 856 (C.D. Cal.1984) (rule 11, as amended in August 1983, does not require the court to make a threshold finding of subjective bad faith before imposing sanctions).

Now, a court must examine whether the claim was reasonable in light of existing law or facts. Fed.R.Civ.P. rule 11 Advisory Committee Notes, reprinted at 97 F.R.D. 196, 198 ("The new language stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. The standard is one of reasonableness under the circumstances."). *See also Goldman v. Belden*, 580 F.Supp. 1373, 1381 (W.D.N.Y. 1984).

■ According to the language of the rule, the court need only find against the attorney on the reasonableness inquiry, in order to impose sanctions. Here, there is no question that Unions' counsel had no reasonable basis in fact for either the original complaint or the first amended com-

plaint insofar as it alleged that Armour failed and refused to arbitrate. Unions' counsel tries to make excuses for its failure to investigate.

Basically, Unions' counsel asserts that because Armour did not respond to the grievance letter within 48 hours of its mailing, Unions' counsel was entitled to assume that Armour was repudiating all the provisions of the grievance procedure. Armour notes that, in fact, under the procedure the plaintiffs utilized, Armour had a week to respond to the letter, and plaintiffs should have gone to the next step in the grievance procedure if they did not hear from Armour in a week, rather than filing suit.

Unions' counsel also says that, even if it had investigated the facts prior to January 9, 1984, the filing date of the original complaint, it would have been confused as to who was actually handling the arbitration, and therefore Unions' counsel was entitled to sue without making any investigation. Union's counsel also says that the letterhead Armour used confused the firm about the corporate structure, so when the firm filed the first amended complaint, it was excusable for the firm to just name all the defendants.

The point of the June 29th order, however, is that Unions' counsel failed to pick up the phone and call Armour or call its own client's bargaining representative to find out what had happened to the grievance letter before filing the complaint. Un-

ions' counsel has said nothing new to excuse this failure. Moreover, nothing Unions' counsel says excuses its failure to investigate with regard to the first amended complaint. At that time, Unions' counsel knew that *someone* had agreed to arbitrate, and yet the firm still failed to do any investigation, and went ahead and filed its amended complaint. The court need not reexamine or restate the eggregiousness of the failure of Unions' counsel to investigate, for the facts are set out in the June 29th order. On this ground alone, rule 11 sanctions were proper.

### B. Dispute over the size of Armour's legal fees.

The objections by Unions' counsel to the sheer dollar amount of Armour's attorney's bill, however, has given this court much to consider.[1] Unions' counsel argues that, when it ordered sanctions, the court did not envision that the attorney's fees would be in excess of $22,000, and that the court should put some limit on the amount of sanctions.

■ The court realizes that a number of different policy concerns are relevant to the determination of the amount of sanctions it should properly award under rule 11. On the one hand, rule 11 sanctions are designed to deter frivolous lawsuits. *See* Advisory Committee Notes ("Great attention by the district courts to pleading and

---

1. Unions' counsel also objects to the size of Armour's bill because it includes items not within the scope of the June 29th order. First, Unions' counsel argues that the court only ordered it to pay the expenses of defending against the original complaint, not the first amended complaint. Second, Unions' counsel objects to those costs and expenses that relate to the time Armour's attorney spent obtaining the protective order. Finally, Unions' counsel objects to the expenses associated with Armour's motion for sanctions.

In light of the court's determination that Armour's attorney should have taken steps to bring the litigation to final disposition before filing a formal motion, the court need only address the first objection by Unions' counsel. He points out that the June 29th order only refers to the "charge in plaintiffs' first complaint," and makes no mention of the first amended com-

plaint. Thus, Unions' counsel argues, Armour should not recover for any fees and costs relating to the first amended complaint.

The court rejects this interpretation of the June 29th order. As Armour's attorney points out, the court explicitly excludes the claims raised in the proposed second amended complaint, but does not exclude the first amended complaint. The absence of a reference to the first amended complaint appears inadvertent and has no significance.

Furthermore, it makes no sense to limit the order as Unions' counsel suggests. The reason why the court ordered sanctions for the original complaint applies equally to the plaintiffs' first amended complaint. In fact, at the time Unions' counsel filed the first amended complaint, Armour *had agreed* to arbitrate and had communicated this to the plaintiffs.

motion abuses and the imposition of sanctions when appropriate, should discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses."). Sanctions also insure, to a large degree, that victims of frivolous lawsuits do not pay the expensive legal fees associated with defending such lawsuits. *Taylor v. Prudential-Bache Securities, Inc.,* 594 F.Supp. 226, 228, 229 (N.D.N.Y.1984) ("The fees requested in these cases are enormous; their very size, however, is testimony to the extensive damage that has been inflicted by these reckless lawsuits"). Using this reasoning, "appropriate sanctions" means Armour should recover for the total $22,-000 bill.

On the other hand, rule 11 only authorizes "reasonable" fees, not necessarily actual fees. Thus, "[t]he assessment of fees against a nonprevailing litigant must be fair and reasonable based upon the particular circumstances of the case." *Tedeschi v. Smith Barney, Harris Upham & Co., Inc.,* 579 F.Supp. 657, 664 (S.D.N.Y. 1984) (case arose while old rule 11 was still in effect). The court in *Tedeschi* found that sanctions were proper, but only allowed the defendant to recover $10,000 of the $49,235.75 attorney's fee bill.

Under the particular circumstances of this case, what troubles the court greatly is the extensive amount of work Armour's counsel did in utilizing the formal motion a machinery of litigation, when Armour's attorney might have brought about the same result by a less formal and less costly means. Federal litigation practice has been evolving over the last few years, in response to the sometimes extremely burdensome cost of litigation. Federal judges no longer sit totally removed from the case until the trial; they are increasingly becoming involved in managing the course of the litigation from an early point in the life of the case. The federal rules explicitly authorize the techniques of case management, and in particular, the status conference. Fed.R.Civ.P. rule 16.

This court, as do many other courts, encourages the parties to explore any aspect of the case with the court through the use of informal,[2] though reported, telephone conference calls. Armour, after the filing of the original complaint, and certainly after the first amended complaint when it was clear that Unions' counsel was continuing its factual misrepresentations, could have called a telephone status conference with the court and the plaintiffs. At this informal conference, Armour could have brought to the court's attention the factual baselessness of the plaintiffs' charges and the court would have been able to explore this issue with the parties at an early state in the litigation. Once Armour had pointed out, in the presence of the court, that it had agreed to arbitrate, it seems likely that Unions' counsel would have had to acknowledge his failure to investigate and would have dropped the suit. And if Unions' counsel refused to drop the suit, the court could have asserted its powers of oversight of litigation to dismiss the suit.

If Armour's attorney was unaware of this court's willingness to hold informal telephone conferences, the attorney certainly had the authority provided in Local Rule 235-3 to request that the judge call a status conference, and to request an order shortening time, as provided in Local Rule 220-10(f), to get the matter before the court quickly. Again, at this status conference, Armour could have brought to the court's attention the factual misrepresentation in the plaintiffs' pleading, and the court could have pursued means of resolving the lawsuit short of the formal, and expensive, motion and hearing for summary judgment that occurred.

The court realizes that it cannot predict with certainty that any concrete results

---

**2.** The term "informal" not only applies to the manner in which the court conducts the hearing—over the telephone—but also to the means which a party uses to set up such a hearing. This judge, and many other judges on this court, allow counsel to arrange a time for a telephone conference by contacting the judge's Courtroom Deputy. He is able to schedule a telephone conference at the earliest date the court's calendar allows.

would have come out of an early telephone conference or status meeting in this case. For example, if Armour had brought the matter to the court's attention at an early status conference, and the court had failed to pursue the inquiry, Armour, of course, would have been justified in pursuing a formal motion for summary judgment. Moreover, had the case been a closer one, and the court felt after the informal conference that the case could not be disposed of in an informal way, the court could have directed Armour to file its formal motion.

█ Thus, while an informal means may not always work to dispose of frivolous lawsuits quickly, the parties have a duty to try to resolve the frivolous claims using the least expensive alternative. The duty arises because the parties have the means available to them, both informal and formal, to gain early access to the judge presiding over their case. Because they have the means to keep the costs of litigation to a minimum, the parties should alert the court to problems that are possible to resolve early in the litigation, without the necessity for expensive, formal motions.

The duty is one of mitigation; it rests on the concept that the victim of a frivolous lawsuit must use reasonable means to terminate the litigation and to prevent the costs of that frivolous suit from becoming excessive. If a party eventually wins rule 11 sanctions, but has failed to use the least expensive route to early resolution, the court may rule that not all the expenses the successful party incurred in making formal motions were reasonable attorney's fees that should be awarded under rule 11.

The court has the authority to impose this duty of mitigation upon those seeking rule 11 sanctions from the discretionary authority given under the rule. The Advisory Committee Notes explain, "The court, however, retains the necessary flexibility to deal appropriately with violations of the rule. It has discretion to tailor sanctions to the particular facts of the case, with which it should be well acquainted."

█ The duty to mitigate, articulated in this order, depends on the degree of frivolousness of a lawsuit the aggrieved party is facing. Under the facts of this case, the court finds that Armour faced a problem that was possible to resolve early in the litigation, and should have directed the court's attention to the issue in an early status conference. In finding that Armour had this duty to mitigate here, the court stresses the simple state of facts. The obvious misrepresentation of the facts by Unions' counsel was known well to Armour. The very reason why Unions' counsel's actions in this case were so eggregious, makes this the kind of case were Armour should have immediately brought the frivolity of the action to the court's attention.

In light of the foregoing, the court will order Unions' counsel to pay $7,500 of Armour's attorney's fees. This figure represents a realistic and appropriate sanction for Unions' counsel. The fact that the court is not awarding Armour the full amount requested does not in any way reflect a decision that the actions of Unions' counsel were excusable. The court's decision rests on a theory that attorneys, when faced with frivolous litigation, have an obligation to use the least expensive atlernative to alert the court to the frivolousness of a case early in the litigation. The court will then be in a position to utilize the pretrial tools provided in the Federal Rules of Civil Procedure to help find an early and possibly inexpensive resolution of litigation.

### CONCLUSION:

The court reaffirms its June 29, 1984, decision to sanction Unions' counsel. The court hereby orders Unions' counsel to pay Armour the sum of $7,500 in attorney's fees and to comply with all other provisions of the June 29th order promptly.

IT IS SO ORDERED.