In re FILM VENTURES INTERNA-
TIONAL, INC., a California
corporation, Debtor.

RAYMOND L. ASHER, A PROFES-
SIONAL CORPORATION,
Appellant,

v.

FILM VENTURES INTERNATIONAL,
INC., a California corporation,
Appellee.

BAP No. CC–87–1921.
Bankruptcy No. LA–84–23195–BR.
Adv. No. LA–85–4874–BR.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted May 19, 1988.

Decided Aug. 15, 1988.

Raymond L. Asher, Los Angeles, Cal., for appellant.

Robert B. Orgel, Pachulski, Stang & Ziehl, Los Angeles, Cal., for appellee.

Before PERRIS, MEYERS and VOLINN, Bankruptcy Judges.

## OPINION

PERRIS, Bankruptcy Judge.

Raymond L. Asher, a professional corporation, appeals from an order requiring it to pay to the debtor $3,135 in sanctions pursuant to Bankruptcy Rule 9011. We affirm.

## I. FACTS

In July of 1984, the debtor, Film Ventures International, Inc. ("Film Ventures"), and Artists Releasing Corporation ("ARC"), its parent corporation (collectively "the companies"), retained Raymond L. Asher, a professional corporation ("Asher"), to represent them in connection with certain litigation.

On October 23, 1984 and November 26, 1984, Asher and the companies entered into letter agreements whereby Asher agreed to continue to render legal services to the companies. The November agreement granted Asher an express security interest in the accounts receivable derived from a certain film and in the proceeds of certain litigation. The October agreement created no express security interest. Asher contends that it was granted an equitable attorney's lien by virtue of these agreements and the conversations occurring contemporaneously therewith. Asher further contends that at the time it and debtor entered into these agreements, the debtor had no intention of granting Asher a valid attorney's lien and further intended to file bankruptcy and avoid these transfers.

Film Ventures filed its bankruptcy case on November 30, 1984 and ARC filed its bankruptcy several months thereafter. The companies retained Asher as special bankruptcy litigation counsel immediately after their respective filings.

In mid–1985, the companies terminated Asher's employment as litigation counsel and initiated an adversary proceeding to avoid the security interests granted to Asher to secure pre-petition legal fees. Asher filed counterclaims for declaratory relief, breach of contract, accounting, constructive trust and fraud. Asher's breach of contract claim alleged that ARC and Film Ventures breached the agreements of October 23, 1984, and November 26, 1984, by commencing the adversary proceeding to avoid the security interest. Its fraud claim alleged that the companies falsely represented that they had granted Asher an equitable attorney's lien. The bankruptcy court ordered that the claims and counterclaims be tried separately. In July of 1986, the companies prevailed on the claims in the adversary complaint.

Following an appeal of a separate order regarding Asher's post-petition fees, Asher attempted to voluntarily dismiss its counterclaims without prejudice. The companies opposed this attempt, contending that a dismissal without prejudice would allow Asher to refile its fraud claim and would impair their rights with respect to a possible malicious prosecution action. The bankruptcy court denied Asher's motion to dismiss without prejudice, stating that it would dismiss only with prejudice. Asher refused to agree to a dismissal with prejudice because of its concern about exposure to a malicious prosecution action.

On April 6, 1987, the companies filed their Motion for Summary Judgment and Request for Sanctions. On May 21, 1987, Asher filed its Request to Enter Dismissal of Counterclaims With Prejudice. The bankruptcy court dismissed the counter-

claims with prejudice and, after receiving further evidence on the amount of attorney fees incurred, entered an order granting Film Ventures $3,135 in sanctions against Asher for filing the fraud and breach of contract counterclaims. Asher appeals from this order.

## II. ISSUES

1. Whether the bankruptcy court erred in imposing Bankruptcy Rule 9011 sanctions against Asher for its filing of the fraud and breach of contract counterclaims.

2. Whether the bankruptcy court abused its discretion in awarding Film Ventures the amount of $3,135 in sanctions.

3. Whether Asher's appeal is frivolous and sanctionable.

## III. STANDARD OF REVIEW

The review of Bankruptcy Rule 9011[1] sanctions involves three standards of review: (1) whether the specific conduct violated the rule is a legal question that is reviewed *de novo;* (2) any disputed factual determinations are reviewed under a clearly erroneous standard; and (3) the appropriateness of the amount of sanctions imposed is reviewed for an abuse of discretion. *Hudson v. Moore Business Forms, Inc.,* 836 F.2d 1156, 1159 (9th Cir.1987); *In re Lewis,* 79 B.R. 893, 895 (9th Cir. BAP 1987); *See In re Chisum,* 847 F.2d 597, 599 (9th Cir.1988).

## IV. DISCUSSION

A. *The legal standard under Rule 11.*

Under Fed.R.Civ.P. 11 and Bankruptcy Rule 9011 (both Fed.R.Civ.P. 11 and Bankruptcy Rule 9011 will be referred to as "Rule 11" unless the context otherwise requires), an attorney who signs a pleading, motion or other paper certifies that he or she has read it and that to the best of his or her knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose. Rule 11 further provides that if a pleading is signed in violation of the rule, the court shall impose an appropriate sanction. Subjective bad faith is not necessary for the imposition of sanctions under Rule 11; rather the standard is the reasonableness of the conduct under the circumstances. *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 829 (9th Cir.1986). The test in assessing the frivolousness of a claim is whether a pleading states an arguable claim. *Hudson,* 836 F.2d at 1159. The pleader must have an objective good faith argument of what the law is or should be. *Zaldivar,* 780 F.2d at 831. Similarly, any improper purpose of the pleader is objectively tested. *Id.* at 832.

B. *Asher's breach of contract claim.*

■ Asher alleged that the two letter agreements between it and the companies, whereby Asher was allegedly granted equitable attorney's liens, were breached by the commencement of the adversary proceeding seeking to avoid the equitable attorney's liens. Asher does not point to any facts in the record, cite any authority, nor make any legal argument to support this novel claim.

One of these two letter agreements creates an express security interest, the other does not. Neither of these agreements mentions an "equitable attorney's lien". Neither of these agreements prohibits the filing of an adversary proceeding to avoid any security interests or to determine the validity of such security interests. If the agreements did contain such a prohibition it would be ineffective; otherwise, creditors could, by contract, insulate themselves from liability for preferential transfers under the Bankruptcy Code. Such a result would clearly be at odds with the equality of distribution principles underlying 11 U.S.

---

**1.** The language of Bankruptcy Rule 9011 and Fed.R.Civ.P. 11 are virtually identical; accordingly in reviewing sanctions under Bankruptcy Rule 9011, we will look to cases involving sanctions under Fed.R.Civ.P. 11. *See In re Chisum,* 847 F.2d 597, 599 (9th Cir.1988); *In re Lewis,* 79 B.R. 893, 895, n. 2 (9th Cir. BAP 1987).

C. § 547. *See generally* 4 *Collier on Bankruptcy* ¶ 547.01 (15th Ed. 1987). Similarly, to find that a debtor breached a security agreement by filing an adversary proceeding to avoid a security interest would also be at odds with the purposes of § 547. For these reasons, we find that Asher's conduct in filing its breach of contract counterclaim violates Rule 11.

### C. *Asher's fraud counterclaim.*

■ Asher's fraud counterclaim alleges that the companies falsely represented, at the time of the two letter agreements, that they had granted Asher equitable attorney's liens in the proceeds of a certain film and certain litigation and that in reliance on such representations, Asher performed legal services for the companies.

This counterclaim, as alleged, does not appear to be well grounded in fact, in violation of Rule 11. The two letter agreements did not mention the phrase "equitable attorney's lien", nor, Asher admits, did the companies verbally mention the phrase. Asher also stated that the term "equitable attorney's lien" was a legal conclusion and that it was his opinion at the time he drafted the counterclaim that he had a valid and enforceable equitable attorney's lien. On the basis of these facts, it does not appear that the companies made any representation regarding an equitable attorney's lien. If the companies made such a representation, it is clear that when Asher filed its counterclaims, Asher did not believe that the representation was false when made. Finally, we do not believe that a lay-person could misrepresent a legal conclusion to an attorney or that an attorney could justifiably rely on a misrepresentation of a legal conclusion made by a lay-person.

Asher's deposition testimony indicates that his fraud counterclaim, as alleged, did not adequately set forth the true nature of his claim. He stated that at the time the companies entered the November agreement, they knew they would be filing bankruptcy, knew any security interests could be avoided, and signed the letter agreements without any intention of being bound thereby. Asher also contends, on the basis

of facts discovered after it filed its counterclaims, that the companies had fraudulently induced him to provide legal services by misrepresenting their financial condition and ability and inclination to pay. Asher calls this theory "bankruptcy fraud."

■ We initially note that the "bankruptcy fraud" theory advanced by Asher is not properly within our Rule 11 inquiry. By its terms, Rule 11 tests the *signed pleading* rather than a possible amendment to the pleading that a party never sought leave to file. As we explained above, the signed pleading was not well grounded in fact.

■ Even if we do consider Asher's newly developed theory in support of its fraud claim, we find that Asher's fraud counterclaim failed to comply with Rule 11. To the extent the new theories asserted by Asher are based upon facts discovered after Asher filed its counterclaims, they should not be considered because a court should avoid using hindsight and should test the conduct by what was reasonable to believe at the time the pleading was signed. *See Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1537 (9th Cir.1986). In addition, Asher admits he has no information to support his belief that the companies knew the security interest could be avoided as a preference. Asher discussed a possible bankruptcy with the companies before entering the agreements and prepared the agreements because of his concerns regarding the companies' ability and inclination to pay his fees.

Aside from the factual inadequacies of Asher's fraud counterclaim, Asher cites no legal authority in support of this claim other than *In re Rhine*, 241 F.Supp. 86 (D.Colo.1965), a case cited for the proposition that a defrauded creditor has the right to rescind and recover his property from a bankruptcy estate if tracing is possible. *Rhine* provides no support for Asher's bankruptcy fraud theory because Asher does not seek to rescind and trace property into the estate. Since he provided services, there is no property to trace.

Because Asher's fraud counterclaim is not well grounded in fact and because Asher has cited no authority to suggest that his fraud claim is warranted by existing law or an extension or modification of existing law, we find that the bankruptcy judge correctly determined that Asher's conduct in filing this counterclaim violates Rule 11.

### D. *The pleading, as a whole, need not violate Rule 11.*

■ Asher argues that, even if its contract and fraud counterclaims violate Rule 11, sanctions are inappropriate because its other two counterclaims had merit and its pleading, as a whole, did not violate Rule 11. We initially note that Asher did not make this argument in the bankruptcy court, and accordingly, we need not consider it. *In re Baldwin,* 70 B.R. 612, 617 (9th Cir. BAP 1987). However, to eliminate any confusion surrounding this requirement, we will address this argument.

■ Asher cites *Martinez, Inc. v. H. Landau & Co.,* 107 F.R.D. 775 (N.D.Ind. 1985) in support of this argument. In *Martinez,* the court declined to impose Rule 11 sanctions when only two of the four arguments advanced in support of a motion to dismiss were without basis in law. The court indicated that Rule 11 was intended to address the motion as a whole rather than particular arguments in a motion. 107 F.R.D. at 777–778.

Similarly, in *Golden Eagle Distrib. Corp. v. Burroughs Corp.,* 801 F.2d at 1540–1541, the court stated that the motion or pleading itself must be frivolous, not merely one of the supporting arguments and the fact that one supporting argument of an otherwise valid motion or pleading is frivolous does not mean that Rule 11 has been violated. This statement in *Golden Eagle,* however, is dicta as it was made in the course of rejecting the district court's requirement that counsel differentiate between arguments "warranted by existing law" and arguments for the extension, modification, or reversal of existing law.

*Hudson v. Moore Business Forms, Inc.,* 836 F.2d 1156 (9th Cir.1987) explained *Golden Eagle* in this regard. *Hudson* found that the excessive amount of damages claimed by the counter-claimant was a violation of Rule 11 even though the counterclaims themselves did not violate the Rule. The court explained that *Golden Eagle* involved a sanction against an attorney whose motion papers were supportable both legally and factually and that the district court objected not to the motion itself but to the manner in which counsel had framed his supporting arguments. 836 F.2d at 1162–1163. *Hudson* distinguished *Golden Eagle* stating that the frivolous damage claim was not otherwise valid but for one supporting argument. *Id.* at 1163. The conclusion that follows from *Hudson* is that, although sanctions may not be appropriate when one of several arguments in support of a motion is frivolous, sanctions would be appropriate when one of several claims in a complaint or counterclaim is frivolous.

Fed.R.Civ.P. 8(e), as made applicable to the within proceeding by Bankruptcy Rule 7008, supports this conclusion. Rule 8(e) provides that "a party may also state as many separate claims and defenses as the party has" and that "[a]ll statements shall be subject to the obligations set forth in Rule 11." The implication is that each claim must individually withstand Rule 11 scrutiny. *See Zick v. Verson Allsteel Press Co.,* 623 F.Supp. 927, 933, n. 12. Further support is found in cases imposing sanctions when only one of several claims in a complaint or counterclaim is found to be frivolous. *See Schwartz v. Jamesway Corp.,* 660 F.Supp. 138 (E.D.N.Y.1987); *Zick v. Verson Allsteel Press Co., supra; Florida Monument Builders v. All Faiths Memorial Gardens,* 605 F.Supp. 1324 (S.D. Fla.1984).

■ Applying this conclusion to the instant case, the fact that Asher asserted two counterclaims that may be meritorious and may not have violated Rule 11 does not preclude a finding that Asher's contract and fraud claims violated Rule 11 and are sanctionable. Accordingly, we find that the bankruptcy court was correct in imposing Rule 11 sanctions on the basis of Ash-

er's breach of contract and fraud counter-claims.

E. *The bankruptcy court did not abuse its discretion in imposing the amount of $3,135 in sanctions.*

■ If a violation of the rule is found, Rule 11 provides that the court *"shall* impose" an *"appropriate* sanction" which may include an order to pay the other party "the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee."

In the present proceeding, Film Ventures filed a declaration regarding the amount of attorney's fees that it incurred as a result of Asher's breach of contract and fraud counterclaims. The amount of damages included $1,700 in attorney's fees incurred in opposing Asher's attempt to dismiss his counterclaims *without* prejudice and $2,007 in attorney time related to the deposition of Asher and the companies' motion for summary judgment. This $2,007 allowed for a 25% discount to account for time incurred with respect to claims other than the breach of contract and fraud claims. The bankruptcy court considered this evidence and imposed sanctions of $3,135.

In its brief, Asher sets forth various grounds for finding that the bankruptcy court abused its discretion in imposing sanctions in the amount of $3,135. However, given the fact that the bankruptcy court reduced the award from $3,707 to $3,135, and given the bankruptcy court's greater familiarity with the parties and issues involved, we do not find that the bankruptcy court abused its discretion in awarding sanctions in the amount of $3,135.

■ Asher also contends that Rule 11 sanctions were inappropriate because Film Ventures breached its duty to mitigate its damages by opposing Asher's motion to voluntarily dismiss its claims without prejudice. Asher's assertion that a party seeking Rule 11 sanctions has a duty to mitigate damages by using reasonable efforts to resolve disputes by inexpensive means is well taken. *See United Food & Commercial Workers v. Armour and Co.*, 106 F.R.

D. 345 (N.D.Cal.1985). But this duty does not require a party to take actions that would impair its rights. Film Ventures refused to agree to a dismissal without prejudice because such a dismissal would impair its rights in a potential malicious prosecution action and because such a dismissal would allow Asher to file a new fraud action against Film Ventures.

■ Moreover, even if Film Ventures should have attempted to mitigate by seeking to resolve the dispute informally, Asher is incorrect in its assertion that Film Ventures' failure to do so precludes Rule 11 sanctions. The duty to mitigate is a factor to consider in determining the appropriate amount of the sanctions rather than propriety of the sanctions. *See United Food & Commercial Workers, supra.* There is no evidence that the court below abused its discretion by refusing to reduce the amount of sanctions based on the alleged failure to mitigate damages.

F. *Sanctions on appeal.*

■ Film Ventures has requested that Asher be further sanctioned for filing this appeal. The Ninth Circuit has ruled that Bankruptcy Rule 9011 is not applicable to bankruptcy appeals. *In re Akros Installations, Inc.*, 834 F.2d 1526, 1531 (9th Cir. 1987); *In re Burkhart*, 84 B.R. 658, 661 (9th Cir. BAP 1988). This Panel has, however, awarded sanctions for a frivolous appeal under Fed.R.App.P. 38 ("Rule 38"). *Burkhart*, 84 B.R. at 658. A frivolous appeal under Rule 38 is one where the result is obvious or the arguments are wholly without merit. *Id.* Under this standard, we find that this appeal was not frivolous. Therefore, sanctions on appeal are not warranted.

V. CONCLUSION

We AFFIRM the bankruptcy court's award of sanctions against Asher and deny Film Venture's request for sanctions on appeal.