In re Ludmilla GORSHTEIN, Debtor.

In re Mandy Abreu a/k/a Migdalia Abreu, Debtor.

In re Monique Saunders, Debtor.

Nos. 02 B 22229(ASH), 00 B 13259(ASH), 02 B 22092(ASH).

United States Bankruptcy Court, S.D. New York.

Nov. 4, 2002.

---

Michael A. Koplen, Attorney at Law, Nanuet, NY, for Ludmila Gorshtein.

Shmuel Klein, Attorney at Law, Spring Valley, NY, for Migdalia Abreu.

Eric C. Kurtzman, Kurtzman, Lipton, Matera, Gurock, SC, Spring Valley, NY, for Monique Saunders.

## DECISION GRANTING SANCTIONS FOR MOTIONS TO LIFT STAY BASED ON FALSE CERTIFICATIONS

ADLAI S. HARDIN, Jr., Bankruptcy Judge.

This decision is provoked by an apparently increasing number of motions in this Court to vacate the automatic stay filed by secured creditors often based upon attorney affidavits certifying material post-petition defaults where, in fact, there were no material defaults by the debtors. The facts in three such motions are summarized here, as exemplars of a larger problem. In each case the debtor was required, with or without the assistance and expense of counsel, to marshal the evidence, prepare and file papers and appear in court to oppose a baseless motion. At risk in each case was the danger that a debtor's home would be lost to foreclosure without just cause and in violation of the debtor's rights under the Bankruptcy Code.

In circumstances such as these, where there is no colorable justification for the misrepresentation, sanctions will be imposed as compensation to the aggrieved debtor and in the confident expectation that the forewarning to secured creditors and their counsel of consequences made explicit by this decision will provide both deterrence and greater attention to the facts for all except the willfully deceitful or the incorrigibly inept.

### Jurisdiction

This Court has jurisdiction over these contested matters under 28 U.S.C. § 1334(a) and 157(a) and the standing order of reference in this District dated July 10, 1984 (Acting Chief Judge Ward). These are core proceedings under 28 U.S.C. § 157(b).

### The Problem in Context

In many courts in this country, such as the trial courts of the State of New York, factual submissions to the court on motions or otherwise must be made by affidavit of an individual having personal knowledge of the facts or the records from which the facts are drawn. Attorney affidavits generally are not accepted, except as to "attorney facts" (e.g., description or summary of proceedings in litigated matters) of which the attorney-affiant is the person who has knowledge of the facts. The rejection of factual submissions by attorneys or others not certifying to personal knowledge of the

facts is undoubtedly predicated in part on the reasonable assumption that the potential for personal accountability for statements made subject to the penalties of perjury is an incentive to care and candor in the compilation and recitation of facts.

In this Court it has not been the practice to require affidavits based upon personal knowledge in routine motion practice. Thus, in motions by secured creditors for relief from the automatic stay in cases under Chapter 7 or Chapter 13, the facts are customarily presented in the form of an affidavit, affirmation or other pleading signed by an attorney for the secured creditor. Institutional creditors with computerized data systems and trained staff and their counsel generally do not make mistakes in the relatively simply task of accounting for a debtor's payments, and the facts concerning the debtor's default are rarely contested. Where the debtor and the creditor do disagree as to amounts due, the differences will almost always be reconciled by both sides sitting down and going over their respective records and accounts. Thus, in most routine lift stay motions in Chapter 7 and 13 cases the practice of using attorney submissions to present "client facts" is more expeditious and cost effective than requiring a client affidavit and generally does not jeopardize fundamental rights or notions of fairness.

In accordance with a standing order of the Bankruptcy Court in this District, virtually every lift stay motion in Chapter 7 and 13 cases is made on a Notice of Presentment, which notifies the debtor that there will not be a hearing in court unless the debtor serves and files written opposition.[1] Many debtors either file for bankruptcy *pro se* or no longer have counsel to assist them when a lift stay motion is filed. Some debtors may lack the necessary skills or industry, however modest, to respond appropriately to defend their interests, and there is always a danger that some may not receive service of a motion, or may lose the papers, or may not understand the import or significance of the motion or how to respond to it.[2] Where the adversary process cannot be counted on to make the system work, the administration of justice places a premium on the integrity and reliability of the written submissions on which important (even though routine) court orders are based. This Court examines every uncontested motion on Notice of Presentment to ascertain that the requisite factual predicate for the relief sought is alleged, particularly the facts concerning the debtor's default.[3] If the unopposed motion alleges a post-petition default and other necessary facts, it will be granted. In short, the Court *relies*, as it must, on the secured creditor's written submission in granting relief.

From the foregoing it is evident that the system and debtors served by it are seri-

---

1. On occasion a debtor will appear in court on the presentment date with oral opposition, which will always be heard.

2. It is by no means fanciful to be concerned that a *pro se* debtor in a Chapter 13 case, who is current on his post-petition mortgage but has pre-petition arrears to be paid through a Chapter 13 plan, may not recognize the difference between pre-petition and post-petition arrears, and therefore may not realize that he has a valid basis to oppose a lift stay motion.

Indeed, secured creditors on occasion assert that there is a post-petition arrearage because their staff incorrectly applied post-petition payments to pre-petition arrears.

3. Failure to allege necessary facts will result in denial of the motion even if uncontested. If either the debt or the default is apparently inconsequential, chambers staff will inquire of both sides to determine if there has been some error or oversight that can be rectified.

ously at risk in cases where a lift stay motion is based on an allegation of material post-petition default where none exists. The debtor and his/her family may lose their home, and the debtor and other creditors may lose significant equity in foreclosure.

### The Facts

#### In re Gorshtein

Secured creditor Chase Manhattan Mortgage Corporation (the "Secured Creditor") in this Chapter 7 case moved by Notice of Presentment dated April 17, 2002 for presentment May 22, 2002 for relief from the automatic stay so as to foreclose on a mortgage covering the debtor's home having a principal balance of $72,434.55. The unverified Motion signed by an outside attorney for the Secured Creditor stated:

3. Debtor has defaulted on the November 1, 2001 mortgage payment and has not remitted any subsequent payments. The arrears total $4,492.08 up to and including the April 1, 2002 payment.

The debtor responded by undated letter to the Court file stamped May 11, 2002. It appears from this letter, and subsequent submissions on behalf of the debtor and the Secured Creditor reveal, that although the debtor had been in default in November 2001, she had tendered all payments necessary to become current prior to the April 17 date of the Secured Creditor's Motion. Indeed, the Secured Creditor had cashed all her payments except the last two, which had been returned to the debtor. As of mid-May the debtor's only arrears consisted of the May mortgage payment of $738 and $1,946.88 for purported legal fees and disbursements in connection with the debtor's alleged but nonexistent default asserted in the April 17 Motion. At the hearing on the Motion the Secured Creditor conceded that the debtor was not in default in respect of her post-petition mortgage payments at the time the April 17 Motion was filed. Later, in response to the Court's order to show cause as to why the Secured Creditor should not be sanctioned, the Secured Creditor again did not contest the fact that the debtor had made all her post-petition mortgage payments prior to April 17 and gave no explanation for having represented to its outside counsel that the debtor was six payments in arrears at the time of the referral to counsel.

#### In re Abreu

This debtor filed her Chapter 13 petition in July 2000. An order was signed on February 22, 2001 confirming her Chapter 13 plan.

By Notice of Motion dated February 7, 2001 Fairbanks Capital Corp. (the "Servicing Agent") as servicing agent for the secured creditor moved for relief from the automatic stay to permit the creditor to foreclose its mortgage on the debtor's home. The Notice of Motion asserted that "Debtors [sic] have failed to make post-petition payments," and a Bankruptcy Specialist with the Servicing Agent swore in an affidavit that "No post-petition payments have been received from Debtor." The debtor, represented by counsel, filed opposition to the Motion demonstrating that the debtor had made *all* her post-petition payments, and the Motion was withdrawn.

Exactly one year later the Servicing Agent filed a second Motion by Notice of Presentment dated February 23, 2002, again seeking relief from the automatic stay so that the secured creditor could foreclose on the mortgage on the debtor's home "for cause, including debtor's failure to make post-petition payments." This second Motion was filed by the same attorney that filed the 2001 Motion and was

supported by an Affirmation "under penalty of perjury" by the attorney dated February 23, 2002 stating "No post-petition payments have been received from DEBTOR since November 2001."

Once again the debtor, represented by counsel, opposed the Motion and demonstrated that she not only had timely paid all her post-petition payments, including the November 2001 and subsequent payments, but that her mortgage payment checks had been cashed. In fact, the second Motion, like the first, was baseless, and the Servicing Agent so conceded.

In response to the Court's order to show cause why the Servicing Agent and its attorney should not be sanctioned, the attorney made no response of his own (relying instead upon a submission by his retained counsel), and the Servicing Agent submitted an affidavit of its Bankruptcy Specialist. The Bankruptcy Specialist confirmed that in the second Motion, as in the first, "the debtor was, in fact, current with her post-petition obligations." The explanation for the Servicing Agent's false Motions was as follows:

> The within debtor has routinely remitted her monthly post-petition payments in multiple checks or money orders from and after August 1, 2000. This action on the part of the debtor has resulted in the delinquent reports that were generated by Fairbanks' accounting system.
>
> 6. Fairbanks' accounting system was set up to apply "full" payments only. When a payment is received by Fairbanks that is less than the contractual amount due, it is deposited into a debtor's suspense account because of said shortage. If additional payments are received that are not in the exact amount of the debtor's contractual post-petition obligation, they to [sic] are deposited into the debtor's suspense account. . . .
>
> 8. Unfortunately, the remittance of payments by the debtor in the manner hereinabove described has caused Fairbanks significant difficulty when attempting to determine the actual status of this debtor's post-petition account.

In reply, the debtor submitted an affirmation stating "I have ALWAYS made my post-petition payments to them ON TIME," and "Fairbanks refuses to send me a regular bill."

If there is a factual issue raised by the parties' respective submissions, it need not be resolved. What is not in dispute is that the debtor had at all times met all of her post-petition obligations to the secured creditor and was not in default at the time either the first or the second lift stay motion was filed. Nor has the Servicing Agent made any showing that the debtor was materially late in making any of her post-petition payments. Neither defects in the Servicing Agent's accounting or computer system nor the inability of its staff to tally up the debtor's monthly payments, whether singular or multiple, can justify the filing of a baseless motion to lift the stay, let alone two such motions.

### In re Saunders

The debtor filed her petition under Chapter 13 on January 22, 2001. By Notice of Presentment dated August 13 secured creditor Washington Mutual Bank, F.A. (the "Bank") moved for relief from the automatic stay with respect to the Bank's mortgage on the debtor's home. The application was signed by an attorney for the Bank. According to the application, as of August 9 there was an unpaid principal balance owed on the note and mortgage of $94,585.83, and the value of the property as listed in the debtor's schedules was $140,000. The application certified under penalty of perjury:

> 7. . . . As of August 9, 2002, the Debtor has failed to make four (4) payments

in the amount of $2,015.49 each, commencing with the monthly payment due May 1, 2002 and including the monthly payment due August 1, 2002, and has not cured said default.

Counsel for the debtor submitted opposition to the Motion, including an affidavit of the debtor and documentary evidence, demonstrating that the debtor had made all of the payments alleged by the Bank to be in default by checks which had been cashed by the Bank. This was conceded by the Bank at the hearing on the motion.

In response to the Court's order to show cause why sanctions should not be awarded, counsel for the Bank did not contest the fact that the debtor had made her normal mortgage payments of $1,020 during each of the months of May–August 2002, as evidenced by her cancelled checks. The explanation tendered by the Bank's attorney was that the Bank had procured insurance for the mortgaged premises, and that by mistake the insurance carrier had underwritten the policy for $1 million instead of $100,000, resulting in a premium of $10,368 which was paid by the Bank in May 2002 and charged against the debtor's account, resulting in an increase in the May post-petition mortgage payment from $1,020 to $2,015.49 (a mistake which the Bank is apparently attempting to rectify on its books). Of course, these obvious errors by the Bank and its insurance carrier do not justify the lift stay Motion, and no explanation is provided for the unqualified certification by the Bank's attorney that the debtor had failed to make *any* post-petition payments for the months in question, when in fact the debtor had made *all* her payments.

### Discussion

I. *Relevant authorities on sanctions*

Section 105(a) of the Bankruptcy Code gives courts the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105. Courts have held that this language is broad enough to empower the court to impose sanctions in conjunction with its inherent power. *In re Spectee Group, Inc.,* 185 B.R. 146, 155 (Bankr.S.D.N.Y.1995).

■ Under the inherent power to supervise and control its proceedings, the court may order the payment of attorneys' fees by an attorney or represented party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Courts have held that the inherent power to sanction extends to filings as well as the commencement or continuation of an action in bad faith. *In re Spectee Group, Inc.* 185 B.R. at 155.

■ Bad faith, for the purposes of section 105, is characterized as an attempt to abuse the judicial process. *Id.* (citing *In re Asbridge,* 61 B.R. 97, 102 (Bankr.D.N.D. 1986)). In determining a party's bad faith, the Court is required to determine if that party has misrepresented facts in its submissions to the Court. *In re Johnson,* 708 F.2d 865, 868 (2d Cir.1983). In addition, courts have held that false representations during bankruptcy proceedings constitute bad faith and are, therefore, subject to sanctions. *See In re French Bourekas,* 175 B.R. 517, 524 (Bankr.S.D.N.Y.1994) (sanctions awarded for false representations concerning financing to fund a plan of reorganization that was found to be part of a scheme to prevent secured creditor from enforcing its rights).

Rule 9011 of Federal Bankruptcy Procedure imposes requirements upon parties and attorneys who make a presentation to the Court by "a petition, pleading, written

motion, or other paper" which is signed by the attorney or represented party. Fed. R. Bankr.P.9011. Before the 1993 amendments to the Federal Rules of Civil Procedure, Rule 9011 was analogous to Rule 11. Courts have held, therefore, that the pre–1993 case law concerning Rule 11 may be used to interpret Rule 9011. *In re Robinson,* 198 B.R. 1017, 1023 (Bankr.N.D.Ga. 1996) (citing *In re Alberto,* 119 B.R. 985 (Bankr.N.D.Ill.1990)).

Under Rule 9011(b), a party making a presentation before the court certifies that this presentation adheres to the guidelines set forth for representations:

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions therein are warranted on the evidence or, if specifically so identified, are reasonable based on a lack of information or belief.

Under Rule 9011 a court may enter an order detailing specific conduct that appears to violate the Rule and directing the accused party to show cause why it has violated the requirements set forth in the Rule. Bankr.P. 9011(c)(1)(B). The court may then impose sanctions on this party that would deter future violations. *In re Kunstler,* 914 F.2d 505 (4th Cir.1990); *see also* 9 L. King *Collier on Bankruptcy,* ¶ 9011.05[2] (15th Ed.1990).

The purpose of Rule 9011 is to deter parties from filing baseless claims in bankruptcy court. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (superceded by rule on other grounds). Courts have held that every individual claim presented before the court must meet the standards set forth in Rule 9011. *Raymond L. Asher, a Professional Corp. v. Film Ventures International, Inc.,* 89 B.R. 80, 85 (9th Cir. BAP 1988). The fact that a party asserts other meritorious claims does not preclude a finding for sanctions on claims that violate the Rule. *Id.* Courts are given discretion to determine the appropriate type of sanctions which are imposed. *Warshay v. Guinness PLC,* 750 F.Supp. 628, 640 (S.D.N.Y.1990) (citing *Donaldson v. Clark,* 819 F.2d 1551, 1557–58 (11th Cir.1987)). In making this determination, the court is able to consider the harm caused in the present case, and set a level of sanction appropriate to deter future sanctionable conduct. *In re Robinson,* 198 B.R. at 1025.

As under Section 105, courts have generally held that imposition of sanctions under Rule 9011 require a showing of bad faith based on objective standards. *In re Burse,* 120 B.R. 833, 836 (Bankr.E.D.Va. 1990); *see also* 9 L. King *Collier on Bankruptcy,* ¶ 0911.02[1] (15th Ed.1990). In order for sanctions to be supported under this test, it must be clear that the motion made has no chance of success under the existing circumstances. *In re Spectee Group, Inc.,* 185 B.R. at 159 (citing *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985)).

## II. *When sanctions are appropriate*

Courts generally, and certainly this Court, are reluctant to grant sanctions against a losing party. The judicial process is best served under the adversary

system by advocacy on behalf of each side which is zealous within the bounds of law and ethics. The prospect of sanctions must not be allowed to chill the presentation of forceful argument on the law or facts. Consistent with this precept, mistakes made in good faith generally should not result in sanctions, either compensatory or punitive, under the so-called American rule under which each side bears its own legal costs with limited and well-defined exceptions.

■ The four motions at issue in these three cases, and others like them, do not fall within the. safe harbor of good faith mistake or zealous advocacy within the bounds of law and ethics. We are not concerned here with interpretations or conclusions or inferences of fact as to which one may make arguments one way or another based on the evidence. The certification in each of these motions that the debtor had failed to make any postpetition payments for "X" months prior to the date of certification was just plain false.

Predictably, all of the movants and their attorneys protested their good faith[4] and lack of intent to harm the debtors in responding to the Court's orders to show cause why sanctions should not be granted. Of course, good faith, being subjective and dependent upon a state of mind in the case of an individual, cannot be "known" as an observable fact and depends upon circumstantial evidence. In the case of an institution, proof of *bona fides* or *male fides* in the sense of a state of mind is even more elusive, since an organization has no state of mind and it may be impossible to even identify the individual(s) responsible for any act or omission by a corporation.

■ Lacking the ability to reliably assess subjective goodwill or lack of it on the part of an individual, much less an entity, the Court must resolve such issues based upon the objective facts. The operative objective facts here were that in each case the movant had the institutional "knowledge" embodied in documentary evidence in its own files that the debtors had paid or tendered payment of all of the mortgage payments which were certified as unpaid. Reasonable investigation of its own records could and did reveal or confirm to the movant that the payments in question had all been made or tendered. Whether the cause of the false certification should be labeled intent to deceive, gross negligence, incompetence or mere inadvertence is indeterminable and, in any event, really does not matter. It does not matter because the result is the same for the debtor and the judicial process, which will be victimized by the misstatement if for any reason the debtor fails to respond timely to a baseless motion.

The integrity of the judicial process is undermined when the court is asked to grant substantive relief based on a certification of purported fact which is contradicted by the movant's own records. In such cases, sanctions are warranted.

### Conclusion

As stated at the outset, this decision is published to make clear to secured creditors and counsel that motions for stay relief based upon false certifications are unacceptable. Under the authorities discussed above, orders will be entered in each of the three cases here involved and in future such motions granting sanctions in part as compensation to the debtors

4. In several cases the creditors proffered explanations for the false representations of the "dog ate my homework" variety (*e.g.,* the Servicing Agent's defective computer system, which could not cope with payments by the debtor except in the exact amount programmed into the computer, or the Bank's mistake in taxing the debtor with the premium on a $1 million property insurance policy for a $100,000 house).

involved and in part to deter such conduct by others in the future. Henceforth, secured creditors and their counsel would be well advised to exercise due care in moving for stay relief; to examine, distinguish between and provide details of pre-petition arrears, if any, and post-petition arrears, late fees, escrow payments, attorneys' fees or other charges; to determine whether any post-petition payments actually received by check, money order or electronic transfer have not been credited to the debtor's account because, for example, the payments were erroneously applied to pre-petition arrears or were held or deposited in a suspense account or returned to the debtor; and to *disclose* all such relevant facts to the Court in an affidavit sworn to by a person certifying that he/she has personal knowledge of the facts based upon his/her personal examination of the creditor's relevant books and records.

The Court will enter orders based upon this decision in each of the three cases.