**In re Lucille Queen PETERSON, Debtor.**

No. 01–40379.

United States Bankruptcy Court, W.D. North Carolina.

March 21, 2003.

O. Max Gardner, III, Shelby, NC, for Debtor.

Steven G. Tate, Statesville, NC, trustee.

## *ORDER DENYING MOTION FOR SANCTIONS AND ASSESSING ATTORNEY'S FEES AGAINST ATTORNEY FOR MOVANT/DEBTOR*

GEORGE R. HODGES, Chief Judge.

This matter is before the court on the "Motion for Sanctions Filed by the Debtor Arising Out of Violations of the Automatic Stay Provided for by Section 362 of Title 11 of the United States Code." The motion seeks sanctions against creditor Chevy Chase Bank for violation of 11 U.S.C. § 362, and three other federal and state statutes. The court has concluded that there is no merit to the motion and that it should be denied. Further, the court has concluded that maintenance of the claim for sanctions was vexatious and merits a monetary sanction against counsel for the debtor. In support of those determinations the court finds and concludes as follows:

1. The debtor filed a Chapter 13 bankruptcy case on April 26, 2001. Debtor listed in her schedules a debt to Chevy Chase Bank secured by a lien on her automobile.

2. Chevy Chase Bank was notified of the debtor's bankruptcy and filed a proof of claim in the case.

3. Prior to the debtor's bankruptcy she paid Chevy Chase Bank by way of a monthly automatic draft on her checking account at First Charter Bank. After the filing of the bankruptcy case, Chevy Chase was paid on the secured portion of its claim by monthly payments by the Chapter 13 Trustee. The debtor paid all of her required Chapter 13 payments to the Trustee regularly, and the Trustee paid Chevy Chase each month, although the amount paid varied occasionally.

4. In July 2001 counsel for Chevy Chase Bank notified debtor's counsel of her retention and the two exchanged correspondence regarding insurance on the debtor's car. Counsel for the debtor and counsel for Chevy Chase Bank also discussed the valuation of the debtor's car.

5. In January 2002 Chevy Chase Bank sent a letter to the debtor threatening repossession of the car and offering to discuss refinancing. Debtor's attorney contacted Chevy Chase Bank about this notice, and within a week Chevy Chase Bank sent a notice to the debtor advising the letter was sent in error and apologizing for it.

6. On October 29, 2002, Chevy Chase Bank caused debtor's checking account to be debited in the amount of $478.48 for payment on its loan. Debtor learned of the draft on November 6 and that same day she met with her branch bank and attempted to straighten out her account: She borrowed $300 from family and friends and deposited that in her account; and she executed a "stop" on any further drafting of her account. First Charter Bank debited her account for overdraft protection charges.

7. The electronic draft by Chevy Chase was caused by the fact that the "automatic debit" status originally set up on debtor's account at Chevy Chase Bank was not removed when the bank received notice of her bankruptcy. The only evidence is that that error was a result of mistake or inadvertence. When one of the Trustee's regular payments to Chevy Chase Bank was less than 90% of the regular payment amount, the automatic draft was activated and the debtor's account at First Charter Bank was drafted.

8. The debtor notified her attorney of the draft by Chevy Chase Bank on November 6, 2002. Five days later, on November 11, without contacting Chevy

Chase Bank or its attorney, debtor's counsel filed the present motion seeking at least $15,000 in damages and attorney's fees, plus cancellation of Chevy Chase Bank's claim and punitive damages for alleged violation of 11 U.S.C. § 362; the Fair Debt Collection Practices Act, 15 U.S.C. § 1692(a)(2); the "North Carolina Deceptive Practices Law," 75–55(3); and N.C. Gen. Stat § 58–70–115(3).

9. On January 8, 2003, Chevy Chase Bank issued a check to debtor in the amount of $553.48 to refund the draft from her account plus miscellaneous expenses. That same date counsel for the debtor filed written Requests for Admissions in pursuance of this motion.

10. This matter was heard by the court on February 28, 2003. After hearing the evidence and argument, the court announced its determination that the motion should be denied and that sanctions should be assessed against debtor's counsel. To that end the court asked Chevy Chase Bank's counsel to submit an affidavit of her time in the matter.

### Discussion

11. The court has jurisdiction of this matter as a contested matter which is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) because it concerns claims and matters arising out of the administration of this bankruptcy case.

12. The primary thrust of debtor's Motion for sanctions is Chevy Chase's alleged violation of the automatic stay established by 11 U.S.C. § 362(a)(1).

13. The function of the automatic stay is to stop collection efforts against a debtor, outside of the bankruptcy proceeding: It gives the debtor a "breathing spell" in order to reorganize her financial affairs. And, it prohibits harassment of the debtor. *See, Budget Service Co. v. Better Homes of Virginia, Inc.,* 804 F.2d

289, 292 (4th Cir.1986). But, the stay does not shield the debtor from all the vicissitudes, aggravations and anxiety of everyday life. (When it rains, debtors protected by the automatic stay get wet). Thus, the Code prescribes a sanction only in two conjunctive circumstances: (1) injury to the debtor; (2) caused by a "willful" violation of the stay. *In re Hamrick,* 175 B.R. 890, 893 (W.D.N.C.1994)

14. Consequently, the code provides only for "willful" violation of the automatic stay. 11 U.S.C. § 362(h) provides that:

An individual injured by a willful violation of a stay provided by this section shall recover actual damages including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

15. The meaning of the term "willful" has been well developed. It is clear that a "strict liability" approach is not applicable. *See, Budget Service Co. v. Better Homes of Virginia, Inc.,* 804 F.2d 289, 292–93 (4th Cir.1986); *In re Atlantic Business and Community Corp.,* 901 F.2d 325, 328 (3rd Cir.1990); *In re Hamrick,* 175 B.R. at 893; *In re Shealy,* 90 B.R. 176, 179 (Bankr.W.D.N.C.1988). The Fourth Circuit has stated that a creditor's conduct in violating the stay is "willful" when:

[the creditor] *knew* of the pending petition and *intentionally* attempted to [continue collection efforts] in spite of it.

*Budget Service,* 804 F.2d at 292–93 (emphasis added). In *Atlantic Business,* the Third Circuit noted that:

[the] bankruptcy courts have construed "willful" as used in the code to mean an *intentional* or *deliberate* act done with *knowledge* that the act is in violation of the stay.

901 F.2d at 328 (emphasis added). Thus, a volitional act alone does not constitute a sanctionable violation. The District Court

for this district adopted the "commonly accepted" definitions of the terms "deliberate" and "intentional" as follows:

"deliberate" [is] formed, arrived at, or determined upon as a result of careful thought and weighing of considerations .... "intention" [is] determined to act in a certain way or to do a certain thing...a person who contemplates any result, as not unlikely to follow from a deliberate act of his own, may be said to intend that result ....

*Hamrick*, 175 B.R. at 893 (citations omitted). It has been clearly established that an "innocent clerical error" does not constitute a sanctionable violation of the stay. *Hamrick*, 175 B.R. at 893; *In re Emory*, No. 99–40608 (Bankr.W.D.N.C. September 14, 2001).

▮ 16. Here, Chevy Chase Bank initially sent a repossession notice to the debtor, and after contact by her attorney, a correction notice and apology was sent within a week of the original contact. At a later point Chevy Chase Bank's attorney and debtor's attorney corresponded about insurance on the car that was Chevy Chase Bank's collateral. Then, ten months after the first contact (and 18 months after the petition was filed), Chevy Chase Bank electronically withdrew funds from debtor's checking account. The electronic draft occurred because the automatic draft code set up for the account had mistakenly and inadvertently not been changed, and upon receipt of a payment from the Trustee's office that was less than the regular amount, the automatic draft was triggered.

17. Chevy Chase Bank's actions amount at most to an "innocent clerical error" or simple mistake. In fact the circumstances here are identical in substance to those in *Hamrick*. In both cases: The creditor was notified of the bankruptcy case; there was a previous inappropriate contact that had been remedied; a subsequent collection event was triggered by an error made by an employee of the creditor; an inappropriate contact resulted; a motion for sanctions was filed; and the error was quickly remedied. *Hamrick* requires the conclusion that Chevy Chase's actions do not constitute a willful violation of the automatic stay.[1]

18. Further there is no other evidence here of any action by Chevy Chase Bank that bespeaks an intent to violate the stay. (a) There is no pattern of repeated collection efforts. Although there were two separate inappropriate contacts in this case, they appear to be unrelated, isolated events—separated by many months of uneventful compliance with the stay. (b) There is no indicia of indifference to the stay. Chevy Chase Bank had in effect procedures designed to insure compliance with the bankruptcy stay. And, when there was an error, the Bank moved quickly to remedy it. (c) There was no aggravated conduct by Chevy Chase Bank. *See, in contrast, In re Shealy*, 90 B.R. 176 (Bankr. W.D.N.C.1988) (threatened "Warrant of Distraint"); *In re Carrigan*, 109 B.R. 167 (Bankr.W.D.N.C.1989). (late night personal confrontation and obscene gestures); *Budget Service*, 804 F.2d at 289 (use of firearm). (d) There was no flagrant or persistent refusal to cease action after being advised of the bankruptcy proceeding. *See, in contrast, In re Carrigan*, 109 B.R. 167 (Bankr.W.D.N.C.1989) (verbal assault

---

1. The court notes that *Hamrick* has been followed consistently by this court, *In re Emory, supra;* and by the bankruptcy courts in the Eastern District and Middle Districts of North Carolina. *In re Clayton*, 235 B.R. 801 (Bankr. M.D.N.C.1998); *In re Brock Utilities & Grading Inc.*, 185 B.R. 719 (Bankr.E.D.N.C.1995). This court emphasizes that the rule of *Hamrick* applies here, even in its Shelby Division.

and gesture after notification to contact attorney); *In re Bloom*, 875 F.2d 224 (9th Cir.1989) (motion for contempt filed after notice of bankruptcy); *In re Stephen W. Grosse, P.C.*, 84 B.R. 377 (Bankr.E.D.Pa. 1988), *aff'd*, 96 B.R. 29 (E.D.Pa.1989); *aff'd*, 879 F.2d 857 (3d Cir.), *cert. denied*, 493 U.S. 976, 110 S.Ct. 501, 107 L.Ed.2d 504 (1989) (failure to withdraw collection proceedings after notice by bankruptcy court was willful violation even though initiation of the proceedings was not).

19. There appears to be no real injury to the debtor by Chevy Chase Bank's actions. There was some measure of shock, disturbance and annoyance, but nothing that would amount to an *injury* meriting damages. The actual monetary cost to the debtor was minimal and was quickly remedied.[2]

20. The debtor did not offer evidence or argument in support of the other bases for sanctions stated in paragraphs 21 and 23 of her Motion. Consequently, the court finds no violation of the Order for Relief, no violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k, and no violation of N.C. Gen.Stat. § 75–55(3) or § 58–70–115(3).

21. The court finds that debtor's counsel's maintenance of this proceeding after Chevy Chase Bank repaid the debtor on January 8, 2003, was without foundation and was vexatious.[3] It appears that counsel's efforts were designed as much to mine fees out of this situation as it was to solve the problem for the debtor. The court bases this conclusion on the following indicia: (a) Counsel filed this Motion for sanctions without any attempt to contact Chevy Chase Bank. He did that just five days after the debtor advised him of the problem, notwithstanding the fact that he was aware of local counsel's representation of Chevy Chase Bank and the fact that the only previous problem had been remedied quickly after it was identified. (b) The facts known at the time the motion was filed demonstrated no willful violation of the stay. (c) The damages claimed in the prayer for relief are wholly excessive. The damage claim appears extortive rather than remedial. (d) There is no basis whatever for maintenance of the litigation after debtor was made whole on January 8, 2003. Debtor's counsel was also counsel in *In re Hamrick* and so he must be aware of the standard for sanctions in this District. Although the facts of this case are virtually identical to the facts in *Hamrick*, debtor's counsel persisted in pressing the litigation. Debtor's counsel's filing of the sanctions motion without contacting the bank or its local attorney, the extortionary demands, and maintenance of the litigation after remedial action, all bespeak an improper motivation.

22. Certainly, after January 8, there was no legitimate basis for furthering the Motion for sanctions, except for the collection of attorney's fees (fees which likely could have been avoided entirely by debt-

2. There was no evidence offered to explain the seven week delay in refunding the improper draft to the debtor. But, it seems reasonable to assume that the debtor's Motion—escalating the matter from a $500 problem to an over-$15,000 litigation—played a part in that delay.

3. The court is aware from e-mail correspondence subsequent to the hearing that debtor's attorney engaged in "highly inappropriate language" in discussions with the bank's at-

torney. That conduct was not part of the record here and is not considered in this Order. However, the court admonishes all of the members of its Bar that unprofessional conduct inside or outside of the courtroom is wholly unacceptable, that the court will deal with such conduct with serious sanctions, and that attorneys who engage in such conduct do so at the risk of losing their privilege to practice in this court.

or's attorney contacting Chevy Chase Bank or its local counsel rather than filing the Motion loaded with unreasonable demands for relief). Consequently, the court concludes that maintenance of this litigation after January 8 was without foundation and was vexatious.

23. The court has the inherent power to manage its affairs and to insure an orderly litigation process by sanctioning bad faith conduct. *Chambers v. NASCO,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Further, 28 U.S.C. § 1927 provides for sanctions against attorneys who vexatiously multiply proceedings. *See, ITT v. Durango Crushers,* 832 F.2d 307 (4th Cir.1987). On that authority, the court has concluded that debtor's counsel should bear the costs incurred by respondent Chevy Chase Bank in this matter after January 8, 2003. The court has concluded that a monetary sanction against debtor's counsel is appropriate here because this is not an isolated instance and because lesser measures have not deterred his inappropriate behavior. Review of the court's docket discloses a highly disproportionate number of sanctions motions filed by this attorney. Denial of such motions, even in published orders as in *In re Hamrick* and *In re Emory,* (*see* note 1) has been ineffective. Consequently, it is appropriate that debtor's counsel bear the consequences of his actions by paying the respondent's costs.

24. A measure of respondent's costs is its attorney's fees. The Bank's attorney has filed an Affidavit detailing 24.30 hours involved in this litigation at $125 per hour plus expenses of $196.18. The total is $3,233.68.

25. Debtor's counsel was given an opportunity to respond to the fee Affidavit and he did so by letter asserting that the time devoted to the case "is not reasonable, is excessive, and appears to be substantially overstated." Debtor's counsel also requested a hearing in order to examine the Bank's attorney and to offer testimony of other unidentified creditors' lawyers. The court will not conduct any further hearing on this matter for several reasons: (a) It is not necessary. The Bank's attorney's Affidavit is clear and sufficient. (b) Debtor's counsel was given an opportunity to respond and his response was only a most general objection. (c) Prolonging this matter by satellite litigation would be an injustice to all. (d) The court's purpose here is to determine a reasonable *sanction,* which is within its discretion. The Bankruptcy Code does not require the court's approval of the Bank's attorney's fees in this circumstance.

26. In any event, fees and expenses set out in the Affidavit appear reasonable under any analysis. The description of services is detailed and complete—all services set out are directly related to responding to the Motion and are necessary. The hourly rate is well within the range of rates in this market. The total fees and expenses is, in fact, in line with the amount demanded by debtor's counsel in his Motion. The court finds and concludes that the amount of fees and expenses, $3,233.68 is an appropriate amount of sanctions for the conduct in this case.

27. In order that the Bar may be assured of uniformity of future application, this Order has been reviewed by each of the other bankruptcy judges in this District, and they agree with it.

It is therefore **ORDERED** that:

1. Debtor's Motion for Sanctions Filed by the Debtor Arising Out of Violations of the Automatic Stay Provided for by Section 362 of Title 11 of the United States Code is denied;

2. Debtor shall have and recover nothing of Chevy Chase Bank; and

3. Movant's attorney shall pay to Chevy Chase Bank the sum of $3,233.68 within thirty days of the date of this Order.