**In re Andrew DAVY and Melissa Davy, Debtors.**

**No. 05–28904 HRT.**

United States Bankruptcy Court, D. Colorado.

June 21, 2006.

Kamiar Saeedian, Denver, CO, for Debtors.

## ORDER REGARDING MOTION FOR ATTORNEY FEES

HOWARD R. TALLMAN, Bankruptcy Judge.

THIS MATTER comes before the Court on Debtors' Motion for Attorney Fees [the "Sanctions Motion"]. A hearing was held on May 16, 2006.

The Court has reviewed the facts and arguments presented by the parties, as well as the pertinent legal authority, and hereby makes the following findings of fact and conclusions of law, pursuant to Fed. R.Bankr.P. § 7052.

### BACKGROUND

Debtors originally filed for Chapter 13 bankruptcy on July 30, 2005. Debtors also filed their first Chapter 13 Plan on July 30, 2005 ("Original Plan"). Among other debts, Debtors' Schedules list a home mortgage with Chase Home Finance, LLC ("Chase"). At the time of filing, Debtors' Schedule A listed the mortgage debt to Chase in the amount of $233,653.94 and

the fair market value of their home as $240,000.00.

The Debtors' Original Plan stated that the Debtors owed $4,733.00 in pre-petition arrearage on their mortgage with Chase. Under the Original Plan, Debtors proposed to cure that arrearage through the plan over 16 months. The Original Plan also provided that they would make their regular payment of $1,865.00 per month directly to Chase beginning on August 15, 2005. However, Debtors did not make their first payment until August 23, 2005, eight days after the August 15, 2005, due date. They also failed to make the regular payment that fell due on September 1, 2005.

Chase, through its previous counsel Cage, Williams, Abelman & Layden, P.C., filed a Proof of Claim on August 19, 2005, claiming a total amount owed of $238,277.25. Based on Chase's Proof of Claim, Debtors' equity in the home at the time of bankruptcy was approximately $1,732.00. The Proof of Claim also reported that the pre-petition arrearage owed was $4,880.54.

On September 7, 2005, Debtors filed an Amended Chapter 13 Plan ("Amended Plan"). In the Amended Plan, the Debtors changed the amount to be cured from $4,733.00 to $6,756.00 and provided for that new cure amount to be paid to Chase over a 24 month period. The Amended Plan also provided for the Debtors to make direct payments to Chase in the amount of $1,715.48 for their regular mortgage payment[1] beginning on October 1, 2005. The Court notes that the amount of $6,756.00 is approximately the sum of $4,880.54, plus the amount of the missed September payment along with fees and charges owed to Chase. In effect, Debtors "rolled over" that September post-petition default, with associated fees and charges, into the total cure amount listed in the Amended Plan. Other than the increased cure amount and payment start date of October 1, 2005, the Amended Plan did not call attention to the fact that Debtors intended to cure a one-month post-petition default to cover their missed September, 2005, payment.

The Chapter 13 Trustee filed an objection to the Amended Plan on October 4, 2005, which was resolved by stipulation. Chase did not object to the Amended Plan, and therefore is bound by the Plan pursuant to 11 U.S.C. § 1327(a). The Amended Plan was confirmed on October 31, 2005.

Debtors made a payment to Chase on September 30, 2005, intending it to cover the October 1, 2005, payment under the Amended Plan. Chase applied the payment as the September, 2005, payment rather than October. At the time that Chase applied that September 30, 2005, payment, the Amended Plan was pending confirmation. The manner in which Chase applied the payment was consistent with the Original Plan, but was contrary to what the pending Amended Plan provided. Upon

---

1. The Court was not given any explanation for the $150.00 reduction in the direct payment provided for in the Amended Plan compared to the Original Plan. The Court's review of the Chase proof of claim reveals that this home was purchased with the assistance of an FHA buydown. The note attached to the Chase proof of claim provides for a fixed interest rate and calls for monthly payments of $1,526.20 for principal and interest only. The FHA Buydown Agreement provides that FHA will contribute $298.73 per month toward the Debtors' monthly payment for the first 12 months and $153.01 per month during the next 12 months. The note called for payments to begin on August 1, 2004, so that subsidy appears to be scheduled to end with the July 1, 2006, mortgage payment. Both the Original Plan and the Amended Plan are silent with respect to that adjustment in the Debtors' monthly mortgage payments.

confirmation of the Amended Plan, Chase evidently did not adjust the way payments had been applied to conform to the confirmed Amended Plan. Consequently, Chase's account records reflected that Debtors were behind in payments by one month.

Debtors' February payment was due on February 1, 2006. Debtors failed to make this payment on the due date. Debtors' default on the monthly amount of $1,715.48 effectively erased the equity of $1,732.00 remaining in the property. Chase's counsel testified[2] that, because Debtors were in default on their February payment and because there was little or no equity remaining in the property, Chase referred the matter to its new counsel, Aronowitz & Ford, LLP. Chase, through its new counsel, filed a Motion for Relief from Automatic Stay of Enforcement of Lien or Security Interest ("Motion for Relief") on February 16, 2006. The Motion for Relief alleges that Debtors made no payments since December, 2005, and that Debtors owed an apparent post-petition arrearage of $3,431.00. Chase attached the Debtors' promissory note and deed of trust as exhibits to the Motion for Relief, but did not attach documents reporting the Debtors' payment history. Under Local Rule 401, Chase's counsel provided notice to the Debtors of their opportunity to file a Response and set a hearing date on the Motion for Relief for March 7, 2006.

On February 24, 2006, Debtors made a payment of $3,431, representing two payments of $1,715.48, intending to make the September, 2005, and February, 2006, payments in full, even though the September arrearage was to be cured in monthly installments as part of the confirmed Amended Plan. Also, on February 24, 2006, Debtors' counsel sent a letter by facsimile transmission to Chase's counsel, requesting a summary of Debtors' payments and an itemization of the default amount. The Court admitted into evidence a facsimile transmission verification report from Debtors' counsel, dated February 24, 2006, indicating that opposing counsel's fax machine was not responding. Chase's counsel testified that his fax machine was not responding because his fax machine and other office equipment were off line due to flooding caused by a ruptured water pipe in counsel's office. Debtors' counsel offered no evidence suggesting that he attempted to call Chase's counsel, mail the letter, or make any other attempt to deliver his request to Chase's counsel. Further, there is no evidence in the record indicating that either counsel conferred with the other prior to the filing of Chase's Motion for Relief or Debtors' Sanctions Motion.

On February 27, 2006, Debtors filed their Response to Chase's Motion for Relief. Debtors allege that a single payment was missed on September 1, 2005, and that the Amended Plan, filed on September 7, 2005, increased the cure amount under the Original Plan by the amount of the September default, plus the fees and charges claimed by Chase. Debtors further allege that their October, 2005, payment, sent on September 30, 2005, was misapplied to the September payment and that, from this point on, Chase's accounting was one month behind.

Chase's counsel testified that, at some point, Chase discovered it had misapplied

---

**2.** This hearing was not typical in that both sides sought to call opposing counsel as witnesses. Given the nature of the hearing and the potential relevancy of discussions between counsel, the Court allowed it. At trial, Debt-

ors' counsel did in fact call Chase's counsel to give testimony, but did not call other witnesses and did not testify himself. For his part, Chase's counsel declined to call Debtors' counsel or any other witness.

Debtors' payments, but that he was not informed of the mistake until after he had filed the Motion for Relief. Neither side called a Chase representative to testify at the hearing. As a consequence, there is no evidence in the record that would shed light on the circumstances by which Chase discovered its error. In his closing argument, however, Chase's counsel acknowledged that Chase had been negligent in checking its records and that Chase may need "to look more carefully at [its] bookkeeping." Chase's counsel withdrew the Motion for Relief on March 6, 2006, a day before the March 7, 2006, hearing.

At the hearing, the Court admitted into evidence two spreadsheets prepared by Chase showing Debtors' Post–Petition Payment History. The first spreadsheet, dated February 24, 2006, reports Debtors' Post–Petition Payment History from August 23, 2005, to January 13, 2006. The second spreadsheet, dated March 1, 2006, covers the same payment periods with the addition of the payment made on February 24, 2006.

The Court notes that Debtors were not present at the hearing and did not provide testimony as to the circumstances surrounding their payments to Chase. However, Debtors' counsel and Chase's counsel agreed at the hearing on the basic facts of this case.

## DISCUSSION

Debtors' counsel contends that the filing of the Motion for Relief and the withdrawal on the eve of the scheduled hearing are sanctionable under three separate theories: (1) Fed. R. Bankr.P 9011, which provides for sanctions involving misrepresentations made to the Court; (2) 11 U.S.C. § 362(k), which imposes punitive damages for violation of an automatic stay; and the Court's equitable powers under 11 U.S.C.

§ 105(a). The Court will address each of these theories in turn.

At the outset, the Court notes that Debtors filed for Chapter 13 Bankruptcy on July 30, 2005, before the amendments of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPC-PA") became effective. The Court will therefore apply the pre–2005 version of the Bankruptcy Code.

## I. SANCTIONS UNDER RULE 9011

Fed.R.Bankr.P. 9011(b), which is derived from Fed.R.Civ.P. 11, states in part:

(b) **Representations to the Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or,

if specifically so identified, are reasonably based on a lack of information or belief.

Subsection 9011(c) further states that Debtors must first serve a motion for sanctions on Chase's counsel pursuant to Rule 7004 and provide a 21 day "safe harbor" for Chase's counsel to withdraw or correct the defective pleading. Fed.R.Bankr.P. 9011(c)(1)(A). Only then may Debtors' counsel *file* the motion for sanctions with the Court. *Id.* The Court notes that Debtors' counsel failed to provide the 21 day notice required by Rule 9011 and he advised that he did not confer with Chase's counsel until *after* he had filed the Debtors' Sanctions Motion.

■ However, Rule 9011 permits this Court, on its own initiative, and after reasonable notice and opportunity to respond provided to the affected parties, to enter an order for sanctions if so warranted. In essence, Debtors contend that the allegations in Chase's Motion for Relief are based on Chase's mistaken belief that Debtors were in default after Chase misapplied Debtors' September 30, 2005, payment. Further, Debtors assert that these factual errors and the withdrawal of the Motion for Relief on the eve of the hearing indicate a lack of reasonable inquiry into the facts by Chase's counsel. Debtors contend that this Court should sanction Chase and send a message to creditors that overly-aggressive behavior won't be tolerated.

## A. Rule 9011 Requirements for Representations to the Court

■ The Court does not find that the Motion for Relief, or its withdrawal by Chase's counsel on the eve of the hearing, violate Rule 9011. First, the Court finds that the Motion for Relief was permitted by existing law. At the time of filing, Debtors had failed to make their February payment to Chase and, therefore, were in default. Chase was entitled to seek relief from the automatic stay in order to pursue other actions against the Debtors.

■ Second, the Court finds that the factual contentions, though ultimately mistaken, do not warrant sanctions under Rule 9011. The Motion for Relief alleges that Debtors were in default as of December, 2005. Chase's counsel testified that the date of Debtors' default was inaccurate because Chase mistakenly applied one of Debtors' payments to the wrong month. It appears that Chase initially misapplied the October 1, 2005, payment under the Amended Plan to the September, 2005, arrearage, and this offset every subsequent payment made by Debtors by one month. Even so, Chase's counsel points out that Debtors were in default on their February payment after February 1, 2006. Chase filed its Motion for Relief on February 16, 2006, after Debtors had two weeks to make the late payment. Further, the nature of § 362 hearings and notice pleadings under the Bankruptcy Code are such that factual allegations may be broadly asserted on knowledge and belief under a reasonable inquiry at the time. Relief from stay actions are "summary" proceedings rather than "plenary." *Grella v. Salem Five Cent Sav. Bank,* 42 F.3d 26, 31 (1st Cir.1994); *Matter of Vitreous Steel Products Co.,* 911 F.2d 1223, 1232 (7th Cir.1990) ("Hearings to determine whether the stay should be lifted are meant to be summary in character. The statute requires that the bankruptcy court's action be quick."). Therefore, the time from the filing of the motion to the case becoming at issue and the conducting of the hearing are quite necessarily truncated. The Court finds that Chase's factual allegations, though ultimately mistaken as to the date of Debtors' default, were reasonable at the time of filing the pleading and 'do not

warrant sanctions under Rule 9011 in light of Debtors' existing default at the time the Motion for Relief was filed.

Moreover, the inquiry by Chase's counsel into the facts of the matter appears reasonable under the circumstances. Chase's counsel testified that he conferred with his client prior to filing the Motion for Relief. On examination by Debtors' counsel, Chase's counsel said he could not recall if he had reviewed Debtors' Amended Plan prior to filing the Motion for Relief. However, the Court has already noted that Debtors' Amended Plan did not clearly indicate that it had "rolled over" the default on the September, 2005, payment into the amount for cure under the Amended Plan. Furthermore, the Court notes that Mr. Ford is Chase's second counsel in this matter. Chase's original Proof of Claim was filed by a prior counsel. Mr. Ford was not Chase's counsel when Debtors' Original Plan filed, later amended, and subsequently confirmed. The Court believes he may be forgiven for failing to recognize the "roll over" in Debtors' Amended Plan when Debtors were not as clear as they could have been regarding their intentions. As the safe-harbor in Rule 9011 contemplates, Chase's counsel did withdraw the Motion for Relief after Debtors pointed out these factual issues and after he confirmed the mistake with his client.

Also of concern is the withdrawal of the Motion for Relief on the eve of the hearing. Generally speaking, some may consider it a sharp practice for counsel to force an opposing party to incur attorneys fees in preparing to defend a motion which is withdrawn by counsel at the last possible moment. However, the circumstances surrounding the Motion for Relief do not suggest the withdrawal was made in bad faith. Chase filed its Motion for Relief on February 16, 2006. Debtors filed their Response on February 27, 2006. Chase withdrew the motion on March 6, 2006, a week after Debtors' Response. The Court finds that this is a reasonable time period for Chase's counsel to confer with his client regarding the inaccuracies in the allegations pointed out by Debtors' Response

In conclusion, the Court holds that the Motion for Relief and the circumstances of its withdrawal do not warrant sanctions under Rule 9011.

### B. Evidence on Debtors' Attorney's Fees

■ Even if the Court found a basis for awarding sanctions under Rule 9011, the Debtors have failed to meet their burden in establishing the reasonableness and necessity of their attorney's fees. Before awarding sanctions, the Court must consider at least three, non-exclusive factors: "(1) the opposing party's reasonable expenses incurred as a result of the violation, including reasonable attorney fees; (2) the minimum amount necessary adequately to deter future misconduct; and (3) the offender's ability to pay." *Masunaga v. Stoltenberg (In re Rex Montis Silver Co.)*, 87 F.3d 435, 439–40 (10th Cir.1996) (citing *White v. General Motors Corp., Inc.*, 908 F.2d 675, 684–85 (10th Cir.1990)). In addition, the Court "may consider factors such as the offending party's history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, the risk of chilling the type of litigation involved, and other factors as deemed appropriate in individual circumstances." *In re Rex Montis Silver Co.*, 87 F.3d at 440; *White*, 908 F.2d at 685.

■ The Court's Order and Notice for Evidentiary Hearing, dated April 19, 2006, indicated unambiguously that the Court would take evidence on the Debtors' Sanc-

tions Motion at the May 16, 2006, hearing. The party seeking sanctions, of course, bears the burden of proving, not only the entitlement to reimbursement of expenses incurred, but also the amount of those expenses. *Poole ex rel. Elliott v. Textron, Inc.,* 192 F.R.D. 494, 507 (D.Md.2000) ("Certainly plaintiff has the burden of proof of these reasonable expenses incurred in making the motion or, caused by the violation."). Debtors did not offer any testimony or documentary evidence at hearing regarding the amount of attorney fees incurred in defending the Motion for Relief. Consequently, the record before the Court gives it no basis to make a finding on the reasonableness or necessity of the fees incurred. *See White,* 908 F.2d at 684 ("Because the sanction is generally to pay the opposing party's 'reasonable expenses . . . including a reasonable attorney fee,' Fed.R.Civ.P. 11, determination of this amount is the usual first step. The plain language of the rule requires that the court independently analyze the reasonableness of the requested fees and expenses").

At hearing, the Debtors' counsel argued that the Court should first determine if Rule 9011 sanctions would be imposed and then conduct a subsequent hearing on the amount of any attorney fees. The Court's heavy docket does not make this a feasible approach. Following the hearing, on May 17, 2006, Debtors' counsel submitted a Summary of Fees and Costs incurred totaling $3,475.40. However, the Court need not address this Summary given its denial of sanctions under Rule 9011.

## II. SANCTIONS UNDER 11 U.S.C. § 362(h)

■ Under the pre–2005 Bankruptcy Code, § 362(h) stated in relevant part:

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h) (2004). The 2005 BAPCPA amendments have moved this language to § 362(k), which Debtors mistakenly cite in their hearing brief. The applicable law in this case is § 362(h) of the pre-BAPCPA Bankruptcy Code.

Debtors assert that filing the Motion for Relief was an action against the Debtors and their bankruptcy estate barred by the automatic stay. Therefore, Debtors request attorneys fees, costs, and actual and punitive damages for Chase's "willful" violation of the automatic stay. Debtors' position is mistaken.

■ Unlike typical cases involving violations of the automatic stay, Chase's counsel has not filed an unauthorized action against the Debtors or their estate. Chase filed its Motion for Relief with this Court in anticipation of a possible state law action against the Debtors or property of their estate. Filing a motion for relief from automatic stay is a proper legal procedure, permitted by the Bankruptcy Code and Rules, for creditors who wish to thereafter take some action in non-bankruptcy forums. In contrast, the Court may sanction a creditor for filing an action while an automatic stay is in place precisely "because a party who willfully violates the automatic stay had the opportunity to seek permission from the bankruptcy court before taking actions that might violate the automatic stay...." *Diviney v. NationsBank of Texas, (In re Diviney),* 225 B.R. 762, (10th Cir. BAP 1998).

Chase properly sought permission from the Court by filing its Motion for Relief. The Debtors were in default at the time the Motion for Relief was filed. The fact that Chase later withdrew its Motion for

Relief does not change the propriety of the motion. Indeed, Debtors have cited no authority suggesting that § 362(h) sanctions would apply to a motion for relief from an automatic stay, nor has the Court's research revealed such authority. The Court finds there has been no "willful violation" of the automatic stay, and therefore declines to impose sanctions under § 362(h).

### III. SANCTIONS UNDER 11 U.S.C. § 105(a)

Section 105(a) of the Bankruptcy Code gives the Court broad powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title . . . in order to prevent abuse of the bankruptcy process." 11 U.S.C. § 105(a). The Tenth Circuit has held that § 105(a) empowers a bankruptcy court to sanction conduct abusive of the judicial process. *See, e.g., Mountain Am. Credit Union v. Skinner, (In re Skinner),* 917 F.2d 444, 447–48 (10th Cir.1990).

Debtors' counsel cites three cases from other jurisdictions citing § 105(a) as a basis for imposing sanctions for abuses of bankruptcy proceedings. *See In re Gorshtein,* 285 B.R. 118 (Bankr.S.D.N.Y.2002) (imposing sanctions where creditors falsely represented to court that debtors had failed to make post-petition payments); *In re Kilgore,* 253 B.R. 179 (Bankr.D.S.C. 2000) (imposing sanctions where creditor falsely advised attorney that Chapter 13 debtors were in default); *In re French Bourekas, Inc.,* 175 B.R. 517 (Bankr. S.D.N.Y.1994) (imposing sanctions where debtor's attorney unreasonably multiplied proceedings to delay a secured creditor's foreclosure proceeding).

 The Court has found no grounds for sanctioning Chase's counsel under Rule 9011 or § 362(h). This does not mean that the Court may not use its equitable powers under § 105(a) to impose sanctions that would not otherwise be warranted. However, the Court's use of such powers is limited to enforcing other, more specific provisions of the Bankruptcy Code. *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 968–69 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."); *U.S. v. Sutton,* 786 F.2d 1305, 1308 (5th Cir.1986) ("[Section 105] does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity."). In addition, sanctions should be imposed only to the extent necessary to prevent the offender from again engaging in objectionable conduct in the future. *See White v. General Motors Corp.,* 977 F.2d 499, 502 (10th Cir.1992) (discussing Rule 11 sanctions). Accordingly, this Court exercises its equitable authority under § 105 sparingly.

 Here, the Court declines to impose sanctions under Rule 9011 and § 362(h). Nonetheless, the Court finds that Chase did make an error when it failed to apply payments to the Debtors' account in accordance with the Debtors Amended Plan once that plan was confirmed. Furthermore, the Court's review of Chase's Proof of Claim reveals that its note contains the standard language giving Chase the right to assess late fees on account of missed payments and to assess attorney fees and expenses against the Debtors on account of their default under the note. For Chase to be allowed to assess such fees and charges against these Debtors on account of its error would be contrary to § 1327 which binds both the Debtors and their creditors to the provisions of a confirmed chapter 13 plan. Under the circumstances, the Court finds that

§ 105 provides an appropriate remedy to enforce the provisions of § 1327 and return parties to the *status quo ante.*

Debtors made the equivalent of two payments on February 24, 2006. Because Chase was off by one month in its default calculations, and Debtors were understandably concerned about the possibility of losing their home, they have effectively overpaid Chase by one payment of $1,715.48. Since the confirmed Amended Plan provides that the September, 2005, payment default is part of the arrearages to be cured over time by payments made through the Chapter 13 Trustee, the Debtors should be given the benefit of this payment. Therefore, the Court will order that Chase credit Debtors one payment of $1,715.48 for the next payment period, and forego or reverse any charges or fees related to Chase's error.

### CONCLUSION

The Court will not grant the Debtors the attorneys fees requested by their counsel in defending the Motion for Relief or in prosecuting their Sanctions Motion. The Court is not surprised that Chase's personnel failed to discern the effect that the Amended Plan was intended to have on how mortgage payments were to be applied. Not only is it atypical for the mortgage arrearages being cured in a chapter 13 plan to relate to a time period extending beyond the petition date, but that treatment was obscured by the fact that the Amended Plan does not separate the handling of the pre-petition arrearage from the cure of the post-petition default. Thus, blame must be shared by the Debtors for the confusion of what mortgage payments were due. The Court finds no basis for concluding that this mistake occurred due to any willful or overreaching conduct on the part of Chase or its newly retained counsel.

Under the rubric of "he who lives by the sword dies by the sword," the Court found the following observations in the case of *In re Peterson,* 297 B.R. 467 (Bankr. W.D.N.C.2003), to be of interest.

The court finds that debtor's counsel's maintenance of this proceeding after Chevy Chase Bank repaid the debtor on January 8, 2003, was without foundation and was vexatious. It appears that counsel's efforts were designed as much to mine fees out of this situation as it was to solve the problem for the debtor. The court bases this conclusion on the following indicia: (a) Counsel filed this Motion for sanctions without any attempt to contact Chevy Chase Bank. He did that just five days after the debtor advised him of the problem, notwithstanding the fact that he was aware of local counsel's representation of Chevy Chase Bank and the fact that the only previous problem had been remedied quickly after it was identified. (b) The facts known at the time the motion was filed demonstrated no willful violation of the stay. (c) The damages claimed in the prayer for relief are wholly excessive. The damage claim appears extortive rather than remedial. (d) There is no basis whatever for maintenance of the litigation after debtor was made whole on January 8, 2003.... Debtor's counsel's filing of the sanctions motion without contacting the bank or its local attorney, the extortionary demands, and maintenance of the litigation after remedial action, all bespeak an improper motivation.

*In re Peterson* 297 B.R. at 472. In that case, the court sanctioned the debtor's attorney for filing an unjustified § 362(h) motion. The Court hastens to add that it does not find that the behavior of Debtors' counsel in the case at bar has risen to the level of the behavior described by the Pe-

terson court. Yet, parallels do exist. Chase investigated and withdrew its motion after the language in the Amended Plan was brought to its attention in the Debtors' Response. Although the Court doubts that Chase would have chosen to file its Motion for Relief if it had realized that the Debtors were only delinquent by 15 days rather than 45 days, it is also clear that the Debtors were, in fact, delinquent on their mortgage payment and, therefore, in default of the provisions of their Amended Plan. Whatever expense that the Debtors incurred in this matter has as much to do with their own payment delinquency and plan default as it has to do with Chase's actions or the actions of its counsel.

Furthermore, there appears to have been minimal attempts by either Debtors' counsel or Chase's counsel to confer with one another directly to discuss the changes in the Amended Plan, the misapplied payments, or other matters prior to the hearing on the Motion for Relief or prior to filing this Sanctions Motion. The Court fully expects that members the Bar will attempt, in good faith, to work out these types of issues among themselves before resorting to judicial intervention. Motions seeking sanctions should truly be a last resort and not a routine litigation tool.

The Debtors deserve to be placed back into the position they occupied prior to the filing of Chase's Motion for Relief and they deserve to be spared any fees or expenses that relate to the error made by Chase. But additional sanctions are not justified in this case. The evidence suggests that the problem appears to be an inadvertent mistake and not a deliberate attempt to overwhelm the Debtors by procedural tactics or increased expenses. The Court's decision here does not mean, in the appropriate case, that the Court might not find stronger sanctions to be fully justified. Where the creditor's accounting error is not corrected expeditiously or the Court finds evidence of bad faith or recalcitrant behavior on the part of the creditor or its counsel that affects the ability of a debtor to reorganize, the result may well be different from today's result. This matter only reinforces this Court's view that it is a good practice for creditors to attach a copy of a debtor's payment history to all of the motions for relief from stay they file. In accordance with the foregoing discussion, it is

ORDERED that the Debtors' Motion for Attorney Fees is GRANTED in part and DENIED in part. It is further

ORDERED that Chase shall apply the Debtors' overpayment of $1,715.48 to the payment otherwise due on July 1, 2006. It is further

ORDERED that Chase forego or reverse all late charges and any other fees or charges assessed against the Debtors' account that are the result of Chase's failure to credit the mortgage payment received from the Debtors on or about September 30, 2005, in accordance with the terms of Debtors' Amended Plan; and that Chase shall not assess or collect any legal fees or expenses from the Debtors for the defense of this Motion for Attorney Fees or for prosecution of Chase's Motion for Relief from Automatic Stay of Enforcement of Lien or Security Interest filed in this Court on February 16, 2006. It is further

ORDERED that, within 30 days of the date of this Order, Chase shall provide the Debtors, through counsel, with a copy of a current statement of the Debtors' account which reflects that Chase has taken all actions described above.